Not Reported in F.Supp.2d                                                                                        Page 1
Not Reported in F.Supp.2d, 2004 WL 1376591
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2004 WL 1376591
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Christopher MCDOWELL, Petitioner,
v.
Joe CHESNEY, Superintendent, State Correctional
Institution at Retreat, and M. Jane Brady, Attorney
General for the State of Delaware, Respondents.
**No. Civ.A.03-818-JJF.**

June 17, 2004.

Christopher McDowell, Petitioner, pro se.
Thomas E. Brown , Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

*MEMORANDUM OPINION*

FARNAN, J.

## I. INTRODUCTION

**\*1** Petitioner Chrisopher McDowell is a Pennsylvania
inmate in custody at the State Correctional Institution
at Retreat in Pennsylvania. Currently before the Court
is Petitioner's Application For A Writ Of Habeas
Corpus Pursuant To 28 U.S.C. § 2254. (D.I. 2; D .I. 3.)
For the reasons that follow, the Court will deny his
application.

## II. PROCEDURAL BACKGROUND

Petitioner is presently incarcerated in Pennsylvania for
parole violations.

The facts and procedural background of his Delaware
crimes are summarized as follows from the Delaware
Superior Court opinion in *State v. McDowell,* 824 A.2d
948 (Del.Super.Ct. May 13, 2003):

On July 23, 2000, Petitioner allegedly robbed a liquor
store in Delaware. A warrant for his arrest in Delaware
was issued on June 24, 2000, and arrangements were
made over the telephone for Petitioner's voluntary
surrender. However, Petitioner failed to appear, and his
girlfriend informed the police that he had fled the
jurisdiction.

On June 27, 2000, Delaware's Attorney General
requested help from local FBI agents who secured a
Federal Unlawful Flight to Avoid Prosecution warrant
("UFAP") against Petitioner. On July 6, 2000,
Petitioner was arrested in Pennsylvania on the UFAP
and handed over to Pennsylvania authorities. On July
13, 2000, Petitioner waived extradition to Delaware on
the Federal UFAP.

Shortly thereafter, Pennsylvania parole authorities
issued their own arrest warrant for Petitioner. The
Pennsylvania authorities informed the Delaware
authorities that Petitioner was no longer available for
extradition because of the new parole violation charges.
The Pennsylvania Parole Authority proceeded against
Petitioner.

On July 31, 2000, Petitioner was indicted in the
Delaware Superior Court for first degree robbery (11
Del. C. Ann. § 832) and related charges. Because he
was in Pennsylvania's custody, he did not appear at his
arraignment. A capias was issued on August 18, 2000.
Then, on August 31, 2000, having been denied
extradition, the Delaware authorities lodged a detainer
request for Petitioner's temporary custody under the
Uniform Agreement on Detainers ("UAD"). On
September 12, 2000, Petitioner was sentenced to
incarceration in Pennsylvania for parole violations.

On January 9, 2002, the Delaware Prothonotary
received a letter from Petitioner requesting "a copy of
my docket entries ... [i]f at all possible could you please
provide me with a copy of the Criminal Rules that
govern a Motion for Dismissal of Charges."

On January 30, 2001, Petitioner signed "Form I"
pursuant to the UAD, which informed him of
Delaware's detainer. Then, on February 13, 2001, after

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1376591
**(Cite as: Not Reported in F.Supp.2d)**

Petitioner had been notified and provided an opportunity to waive extradition under the UAD, the Delaware Attorney General's office received a letter from the Pennsylvania Department of Corrections ("Pa DOC") stating that:

> [Petitioner] has indicated that he is not willing to return to your jurisdiction, and that he intends to fight extradition. He claims he signed a waiver this past summer and this action is no longer timely.

**\*2** It appears that Petitioner did not communicate with Pennsylvania or Delaware authorities again until September 4, 2001, when he sent a request to the Pa DOC for a copy of the forms sent by Delaware pursuant to the UAD. He also asked which forms had been sent to Delaware. The Pa DOC responded:

> [Petitioner], I'm not sure exactly what you mean, but I think you are referring to Form IV of the UAD "offer to deliver temporary custody." Since a signed waiver of extradition is not on file, and could not be sent [with Pennsylvania's offer of temporary custody to Delaware under the UAD], the matter remains in limbo. Do you wish to waive at this time? If so, please contact me.

Petitioner did not respond or sign the "Form IV" waiver of extradition, and consequently, the Pa DOC could not present the State of Delaware with an offer of temporary custody.

On October 24, 2001, Petitioner wrote the Pa DOC:

> Could you please inform me as to my status of the detainer from the state of Delaware. All of the proper paperwork has been completed. I sent the [Delaware] Prothonotary a letter while I was down [at] GraterFord [sic] in January. They sent the proper paperwork here to obtain temporary custody. In February you sent them the paperwork to continue the process ...

The Pa DOC told Petitioner that the only thing holding up the process was his refusal to waive extradition by signing "Form IV":

> [Petitioner], please refer to my response dated 9-4-01 to your request dated the same. The [U]AD is in limbo-awaiting a waiver of extradition so that our offer to deliver temporary custody (form 4) can be

sent. Do you wish to waive at this time? If so, contact me.

According to Petitioner, he filed a motion to dismiss the indictment on speedy trial grounds in September 2001, but no such motion is indicated on the Superior Court Docket. In this motion, Petitioner allegedly argued that he signed a waiver of extradition prior to the Pennsylvania warrant and during his detention pursuant to the UFAP. He argued that this waiver remains valid, and required Delaware to bring him to trial within 180 days of July 13, 2000.

Between September 2001 and February 2003, Petitioner wrote various letters to the Delaware Prothonotary's Office, a Delaware Deputy Attorney General, and the Delaware Governor's office requesting information on his case and how to file a motion to dismiss. (D.I.3.)

Thereafter, on February 13, 2003, Petitioner's counsel filed in the Delaware Superior Court a motion to dismiss the indictment on speedy trial grounds. The court held a hearing to take testimony and make factual findings, but Petitioner refused to take the steps necessary to secure his appearance in Delaware. Petitioner then filed a motion titled "Defendant's Response to Court Order Requiring Defendant to Waive Extradition" and attached an affidavit waiving "any appearances that may be desired at any, and or all hearing(s) regarding the Motion to Dismiss." The Delaware Superior Court denied the motion to dismiss because Petitioner did not comply with the requirments of the UAD, and because by failing to appear before the Superior Court, no state or federal constitutional protection was implicated. *See State v. McDowell,* 824 A.2d 948 (2003). Petitioner appealed to the Delaware Supreme Court, but the appeal was subsequently dismissed upon Petitioner's motion for voluntary dismissal. (D.I. 16, Del.Super. Ct. Dkt. dated 1/8/04, Entry # 23.)

**\*3** Petitioner's counsel filed a form application for federal habeas relief, along with a supporting memorandum, on August 19, 2003. The application and memorandum assert one claim: that Petitioner has been

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

denied his right to a speedy trial. (D.I. 2; D.I. 3.)

Respondents ask the Court to dismiss the application because Petitioner has failed to exhaust state remedies.

Petitioner's § 2254 application is now ripe for review.

### III. ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). AEDPA increases the deference federal courts must give to state court decisions, primarily by imposing procedural requirements and standards for analyzing the merits of a habeas petition. *See id. at 206.* Generally, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).

### IV. DISCUSSION

Petitioner asserts that Delaware's failure to bring him to trial on his felony charges during his three year incarceration in Pennsylvania has violated his federal and state constitutional right to a speedy trial. (D.I. 3 at 6.) He asks the Court to grant a Writ of Habeas Corpus "requiring that these charges be dropped and that the detainer lodged against Petitioner as a result be withdrawn." FN1 (*Id.* at 13.)

> FN1. Respondents discuss two alternative claims for relief: (1) dismissal of the criminal charges and detainer; and (2) enforcement of Delaware's statutory duty to bring him promptly to trial under the terms of the UAD.

(D.I. 14 at 5.) However, because Petitioner only asks the Court to dismiss the criminal charges and the detainer, the Court will not discuss the alternative claim analyzed by Respondents. *See* D.I. 3 at 13.

### A. Petitioner's habeas application should have been brought pursuant to 28 U.S.C. § 2241.

Petitioner filed his habeas petition pursuant to 28 U.S.C. § 2254. As an initial matter, the Court must determine whether it has the authority to review this petition under 28 U.S.C. § 2254.

Section 2254 authorizes federal courts to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). As such, § 2254 is a post-conviction remedy, and does not grant a federal court habeas jurisdiction to review a claim raised prior to a petitioner's conviction. *See Moore v. DeYoung,* 515 F.2d 437, 441 (3d Cir.1975). In contrast, 28 U.S.C. § 2241 authorizes federal courts to issue the writ of habeas corpus to any prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States" before a state court judgment is rendered. 28 U.S.C. § 2241(c)(3); *see Moore,* 515 F.2d at 442. Section 2241 permits a petitioner to seek pre-trial relief on a speedy trial claim, *see Moore,* 515 F.2d at 442-45, and it has been construed to allow a petitioner held in one state to challenge a detainer lodged against him by another state. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484 (1973).

**\*4** Here, Petitioner is in custody pursuant to a Pennsylvania judgment, yet his habeas application seeks pre-trial habeas relief on his speedy trial claim involving his pending Delaware charges and a Delaware detainer. Applying the foregoing principles, the Court concludes that § 2241 , rather than § 2254, provides the authority to review this claim. FN2 Recognizing that the habeas analysis under § 2241 is identical to that required under § 2254, the Court will treat the petition as if it were properly asserted pursuant to § 2241. FN3

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4
Not Reported in F.Supp.2d, 2004 WL 1376591
**(Cite as: Not Reported in F.Supp.2d)**

FN2. Although the Court has concluded that Petitioner should have asserted his claim pursuant to § 2241, the Court acknowledges the Third Circuit's holding in *Coady v. Vaughn,* 251 F.3d 480 (3d Cir.2001) requiring a state prisoner to rely on § 2254, not § 2241, when challenging any incarceration "pursuant to the judgment of a State court." *Id.* at 485. However, the Court does not interpret *Coady* to prohibit reliance on § 2241 when a state prisoner challenges only his pre-trial detention.

FN3. The Court declines to dismiss the petition on this ground, because "[w]hether [Petitioner's] petition is properly treated as a § 2241 petition or a § 2254 petition is largely academic." *Crawford v. Varner,* 2002 WL 229898, at *2 (D.Del. Feb. 15, 2002). As explained *infra* at 10-11, the exhaustion requirement is identical under both statutes.

**B. Petitioner's State constitutional claim is not cognizable on federal habeas review**

Petitioner alleges that he was denied a speedy trial in violation of the Delaware State Constitution. This claim is not cognizable on federal habeas review. 28 U.S.C. § 2254; 28 U.S.C. § 2241; *Engle v.. Isaac,* 456 U.S. 107, 119 (1982). As such, the Court will dismiss Petitioner's state constitutional claim.

**C. Petitioner did not exhaust state remedies for his federal constitutional claim**

Absent exceptional circumstances, AEDPA does not permit a federal court to review a habeas petition unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44 (1999); *Picard v. Connor,* 404 U.S. 270, 275 (1971). AEDPA states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1).

A petitioner "shall not be deemed to have exhausted remedies available ... if he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The exhaustion requirement is based on principles of comity, requiring the petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 844-45; *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). Generally, the petitioner must demonstrate that the habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec. 22, 2000).

If a federal habeas claim was not fairly presented to the state courts, and further state court review is still available, that claim is not exhausted. Generally, federal courts will dismiss without prejudice claims that have not been properly presented to the state courts, thus permitting petitioners to exhaust their claims. *Lines v. Larkins,* 208 F.3d 153, 159-60 (3d Cir.2000).

**\*5** As with claims asserted under § 2254, a federal court cannot review a claim asserted pursuant to § 2241 unless state remedies have been exhausted. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484 (1973). Although § 2241 does not explicitly require exhaustion, judicial decisions have incorporated an exhaustion requirement as part of the judicial review under § 2241. *See id.* at 489-92; *Moore,* 515 F.2d at 442. "[T]here is no distinction [between § 2241 and § 2254] insofar as the exhaustion requirement is concerned." *Moore,* 515 F.2d at 442.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 5
Not Reported in F.Supp.2d, 2004 WL 1376591
**(Cite as: Not Reported in F.Supp.2d)**

However, when a petitioner raises a speedy trial claim prior to his trial, he cannot exhaust state remedies in the traditional sense because he still can raise the speedy trial claim on direct appeal after his conviction. *See Braden,* 410 U.S. at 489. In such circumstances, a federal court must determine whether the petitioner is attempting to enforce a state's constitutional obligation to bring him to trial, or whether he is trying to abort a state proceeding. *Id.* at 489-91.

If a petitioner is asking the state courts to enforce "the state's constitutional obligation to bring him promptly to trial," and he has "made repeated demands" of this request on the state courts, then the interests underlying the exhaustion requirement are satisfied, despite the fact that the petitioner has not yet been convicted. *Braden,* 410 U.S. at 489-90. Federal habeas review will not be foreclosed on exhaustion grounds because "[a] federal habeas corpus action at this time and under these circumstances does not jeopardize any legitimate interest of federalism." *Id.* at 491-92.

In contrast, when a petitioner is attempting to "abort a trial in the state courts" by seeking to dismiss pending state charges, to grant habeas review would be to permit premature litigation of constitutional defenses in federal court. FN4 *Id.* at 493. Consequently, federal habeas review is not available unless the petitioner has exhausted state remedies and he makes "a special showing of the need for such adjudication" or he demonstrates "extraordinary circumstances" sufficient to excuse his failure to exhaust. *Moore,* 515 F.2d at 443-46; *see Braden,* 410 U.S. at 490-93.

FN4. Indeed, it is even questionable whether a speedy trial claim asking for the pre-trial dismissal of a state's criminal charges is within the scope of relief permissible under § 2241. Although § 2241 authorizes a federal court to grant a habeas writ to a prisoner who is subjected to an unconstitutional detention, it does not permit federal courts to sit as " 'a pretrial motion forum for state prisoners.' " *Moore,* 515 F.2d at 445 (quoting *Braden,* 410 U.S. at 493). However, this Court follows the

Third Circuit's analysis in *Moore* where, after discussing the Supreme Court's warning against such pretrial motions, it proceeded to discuss exhaustion and the "extraordinary circumstances" exception to exhaustion.

Here, Petitioner is asking for the dismissal of the Delaware charges and the Delaware detainer lodged against him. As such, he is trying to "derail ... a pending state proceeding." *See Moore,* 515 F.2d at 445-46; *Braden,* 410 U.S. at 493. Applying the principles discussed above, federal habeas review is unavailable unless Petitioner has exhausted state remedies or he demonstrates "extraordinary circumstances" permitting habeas relief prior to state exhaustion.

A review of the record reveals that Petitioner has not exhausted state remedies. Although Petitioner did present his speedy trial claim requesting dismissal of the criminal charges and the Delaware detainer to the Delaware Superior Court in his motion to dismiss, he did not appeal the Superior Court's denial of this motion to the Delaware Supreme Court. FN5 Moreover, further state review of this claim is available because Petitioner can raise his speedy trial claim on direct appeal in the event of a conviction. *See Moore,* 515 F.2d at 444. Thus, Petitioner has not exhausted state remedies, and unless he demonstrates "extraordinary circumstances" sufficient to excuse his failure to exhaust, federal habeas review is unavailable. *See id.* at 446.

FN5. The record reveals that Petitioner filed an appeal with the Delaware Supreme Court, but subsequently withdrew the appeal voluntarily. As such, he never presented this claim in a procedural context permitting the Delaware Supreme Court to review the merits.

**\*6** Neither the Third Circuit nor the United States Supreme Court has explicitly described the "boundaries of 'extraordinary circumstances' [sufficient] to warrant pre-trial interference." *Id.* at 447. However, the denial of a speedy trial, without more, does not constitute an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 1376591
**(Cite as: Not Reported in F.Supp.2d)**

"extraordinary circumstance." *Moore,* 515 F.2d at 449. Further, when attempting to justify pre-trial habeas interference, a petitioner must present allegations revealing "that quality of delay, harassment, bad faith or other intentional activity which, in an appropriate situation, might constitute an 'extraordinary circumstance.' " *Lambert v. Blackwell,* 134 F.3d 506, 517 (3d Cir.1997) (citation omitted).

Here, Petitioner asserts that his trial has been delayed for over three years, but he does not allege any "harassment, bad faith or other intentional activity" which might constitute an extraordinary circumstance. His Memorandum of Law in Support of his Petition for a Writ of Habeas Corpus states "[t]his petition is based on the unexplained failure of the State to follow through on the return of the defendant to Delaware." (D.I. 3 at 8.) Thus, in the absence of any allegations of "harassment, bad faith or other intentional activity," the Court concludes that the three-year delay does not constitute an "extraordinary circumstance" sufficient to warrant pre-exhaustion federal habeas review. *See Moore,* 515 F.3d at 447 ("manifest shortcomings by the prosecutor's office and negligence in the conduct of Moore's prosecution" did not constitute "extraordinary circumstances"); *cf. Braden,* 410 U.S. at 508 (dissent) (pre-trial federal habeas interference may be warranted despite failure to exhaust where the state did not have jurisdiction to bring criminal charges against the petitioner). Accordingly, the Court will dismiss Petitioner's habeas petition without prejudice for failure to exhaust state remedies.

### IV. Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

For the reasons stated above, the Court concludes that it must dismiss Petitioner's habeas application without prejudice for failure to exhaust state remedies. Reasonable jurists would not find these conclusions unreasonable. Consequently, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will be denied.

### V. CONCLUSION

For the foregoing reasons, Petitioner's request for habeas relief filed pursuant to 28 U.S.C. § 2254, and construed to be asserted under 28 U.S.C. § 2241, will be dismissed without prejudice.

**\*7** An appropriate Order will be entered.

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Petitioner Christopher McDowell's Application For A Writ of Habeas Corpus Pursuant To 28 U.S.C. § 2254, construed to be an Application For A Writ of Habeas Corpus Pursuant To 28 U.S.C. § 2241, is DISMISSED WITHOUT PREJUDICE. (D.I. 2; D.I. 3.)

2. The Court declines to issue a certificate of appealability.

D.Del.,2004.
McDowell v. Chesney
Not Reported in F.Supp.2d, 2004 WL 1376591

Briefs and Other Related Documents (Back to top)

• 1:03CV00818 (Docket) (Aug. 19, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.